No. 100,425

STATE OF KANSAS, *Appellee,* v. MELVIN TRAUTLOFF, *Appellant.*

(217 P.3d 15)

Opinion filed October 9, 2009.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, argued the cause and was on the brief for the appellant.

*Chad Sublet,* assistant county attorney, argued the cause, and *Heather R. Jones,* county attorney, and *Steve Six,* attorney general, were on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: Melvin Trautloff appeals from his convictions for one count of rape, K.S.A. 21-3502(a)(2), one count of aggravated criminal sodomy, K.S.A. 21-3506(a)(1), one count of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(3), and one count of sexual exploitation of a child, K.S.A. 21-3516(a)(6).

J.M. is the mother of R.M., who was born on April 19, 1999. J.M. first met Trautloff in February 2006, and they developed a

romantic relationship. J.M. subsequently arranged to buy a car through Trautloff, agreeing to pay him $50 every 2 weeks. According to J.M.'s testimony, Trautloff agreed to reduce the payment by $50 if J.M. "gave him" R.M. for "sexual activity." J.M. complied, and in July 2006 she "gave" R.M. to Trautloff, leaving the 7-year-old girl with him at his truck. J.M. testified to additional sexual liaisons involving herself, R.M., and Trautloff in July and August 2006.

Trautloff was admitted into the Franklin County jail on August 24, 2006, on a parole violation. He was subsequently transferred to Lansing Correctional Facility on the violation and was released on November 30, 2006. While he was incarcerated, Trautloff sent a number of letters to J.M., in which he made frequent graphic references to past and prospective sexual acts involving R.M.

At the end of April 2007, Trautloff, who was again incarcerated on parole violations, asked a friend to clean out his truck and house. In the house, the friend found "disturbing" letters, which she turned over to the local police department. Recordings were made of telephone calls from Trautloff to the friend and to J.M. In the course of these calls, Trautloff urgently asked the women to recover some items that he deemed to be very important from his premises. These items later proved to include the correspondence exchanged between Trautloff and J.M.

The State charged Trautloff with one count of rape, one count of aggravated criminal sodomy, one count of aggravated indecent liberties with a child, and one count of sexual exploitation of a child. J.M. pled guilty to rape, aggravated criminal sodomy, and attempted aggravated indecent liberties with a child. She testified against Trautloff at his trial.

J.M. testified that, following Trautloff's release from Lansing, he had sexual relations with R.M. some 20 times between December 1, 2006, and April 20, 2007. She recounted in detail several of the events. In February 2007, J.M. picked R.M. up from school in the morning and took her to meet Trautloff on at least three occasions. During each of these encounters, J.M. helped undress R.M., and Trautloff then engaged in digital and oral sex with R.M. before ejaculating in and on her vagina. At Trautloff's request, J.M. took

photographs of some of these encounters on a cell phone camera and made at least one video recording. J.M. then helped R.M. clean up and get dressed, drove R.M. to get something to eat, and returned R.M. to school.

Forensic examiners were later able to retrieve sexually explicit photographs from J.M.'s phone, and these photographs were introduced into evidence. Based on other photographs of Trautloff and R.M. and based on the testimony of witnesses, several of the photographs are of a girl who resembles R.M. and of a man who resembles Trautloff. The other photographs are close-ups of genitalia. At trial, Trautloff contended that he was not the man depicted in the photographs and that he was merely indulging J.M.'s fantasies in his letters. He denied having any sexual relationship with R.M.

The jury found Trautloff guilty of all four charged counts, and the district court sentenced him to life without parole for the rape conviction, life without parole for the aggravated criminal sodomy conviction, life without parole for the aggravated indecent liberties with a child conviction, and life without parole for the sexual exploitation of a child conviction, with all sentences running concurrently. He timely appealed.

## I. Did The District Court Err When It Sentenced Trautloff To Life In Prison Without The Possibility Of Parole?

Trautloff initially contends that he did not meet the prerequisite prior convictions required by statute for enhancing his sentence to life without the possibility of parole. This issue turns on the meaning of the statutory phrase "prior conviction event."

On July 24, 1996, in case number 96CR122, Trautloff was convicted of one count of aggravated indecent liberties with a 9-year-old child, one count of aggravated indecent liberties with an 8-year-old child, and one count of rape of an 8-year-old third child. The Kansas Court of Appeals affirmed one of the two convictions of aggravated indecent liberties and the rape conviction but reversed the second aggravated indecent liberties conviction. *State v. Trautloff*, No. 77,772, unpublished opinion by the Court of Appeals filed April 24, 1998, *rev. denied* 265 Kan. 889 (1998).

In the present case, the district court relied on the two prior convictions that were upheld on appeal to sentence Trautloff to terms of life imprisonment without parole. The question presented on appeal is whether the prior convictions constituted a single conviction event or multiple conviction events, as defined by the legislature.

K.S.A. 21-4642(a) provides that aggravated habitual sex offenders "shall be sentenced to imprisonment for life without the possibility of parole." The statute defines an aggravated habitual sex offender to be "a person who, on and after July 1, 2006: (A) Has been convicted in this state of a sexually violent crime . . . ; and (B) prior to the conviction of the felony under subparagraph (A), has been convicted on at least two prior conviction events of any sexually violent crime." K.S.A. 21-4642(c)(1).

The statute defines "prior conviction event" as "one or more felony convictions of a sexually violent crime occurring on the same day and within a single count. These convictions may result from multiple counts within an information or from more than one information." K.S.A. 21-4642(c)(2). Resolving this issue requires understanding the meaning of the words "within a single count."

Interpretation of a statute is a question of law over which this court has unlimited review. *State v. Storey*, 286 Kan. 7, 9-10, 179 P.3d 1137 (2008). An appellate court's first task in construing a statute is to "ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning." *State v. Stallings*, 284 Kan. 741, 742, 163 P.3d 1232 (2007). When a statute is plain and unambiguous, this court will not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. In that situation, the court does not need to resort to statutory construction. It is only if the statutory language or text is unclear or ambiguous that the court moves to the next analytical step, applying canons of construction or relying on legislative history to construe the statute to give effect to the legislature's intent. *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007).

As a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the meaning of

the statute is decided in favor of the accused. Nevertheless, this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

The difficulty in the present case is the lack of harmony between two parts of the statutory definition of a prior conviction event. Trautloff's prior convictions were for multiple felonies involving sexually violent crimes contained in the same information; these convictions occurred on the same day but not "within a single count." Because it is not possible for more than one felony conviction to occur within a single count, as the statute posits, it is appropriate to look into the history of the legislation and to apply the canons of statutory construction to determine the legislature's intent.

A review of the legislative minutes relating to the enactment of K.S.A. 21-4642 in 2006 reveals no discussion of section (c)(2). It is likely that the legislature drew the "conviction event" language from older versions of the sentencing guidelines. See K.S.A. 1993 Supp. 21-4703; K.S.A. 1993 Supp. 21-4720(b)(4). K.S.A. 1993 Supp. 21-4720(b)(4) provided in part: "The total sentence assigned for a current conviction event cannot exceed twice the base sentence." A conviction event was defined as "one or more felony convictions occurring on the same day and within a single *court*. These convictions may result from multiple counts within an information or from more than one information." (Emphasis added.) K.S.A. 1993 Supp. 21-4703(c). The legislature deleted these references to conviction events in 1994. See L. 1994, ch. 291, secs. 49 and 59.

As a general rule, courts should read statutes to avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754, 189 P.3d 494 (2008). We conclude that the wording of K.S.A. 21-4642(c)(2) is the product of a typographical error and that the legislature intended to include convictions occurring on the same day and within a single *court*. We are confirmed in this conclusion by the legisla-

ture's correction of the statute in L. 2009, ch. 70, sec. 3, changing "count" to "court."

Trautloff clearly has two prior *convictions*, but the statute specifically addresses "conviction events," not "convictions." The legislature could have written the statute to define an aggravated habitual sex offender as an offender convicted of two prior crimes. The legislature instead chose to define the aggravated habitual sex offender as one who is convicted on at least two prior *conviction events*. The language of 21-4642(c)(1) and (c)(2), when the sections are read together, supports a reading that a conviction on a single day of multiple counts, even involving multiple victims, constitutes only one prior conviction event. This interpretation is supported by this court's prior analysis of K.S.A. 1993 Supp. 21-4703(c) in *State v. Roderick*, 259 Kan. 107, 114, 911 P.2d 159 (1996), holding that repealing the 1993 Supp. 21-4703(c) same-day, same-court rule changed the "double rule" in sentencing to a same-day, same-information rule.

The State argues that Trautloff failed to object to his criminal history at sentencing. While it is true that Trautloff conceded at sentencing that he had two prior convictions of sexual crimes, he did not concede that he had two prior conviction *events*.

This court may correct an illegal sentence at any time. K.S.A. 22-3504(1); *State v. McCarley*, 287 Kan. 167, 172, 195 P.3d 230 (2008). An illegal sentence, as contemplated by K.S.A. 22-3504(1), is a sentence imposed by a court without jurisdiction; a sentence that does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence that is ambiguous with respect to the time and manner in which it is to be served. *State v. Davis*, 283 Kan. 767, 769, 156 P.3d 665 (2007).

Trautloff had only one prior conviction event for sexually violent crimes, and the district court erred in sentencing him to life terms without the possibility of parole. The district court determined that Trautloff had a criminal history classification of E. The nature of the crimes, however, will possibly make him subject to K.S.A. 21-4643(b)(1), requiring a life sentence with a mandatory minimum term of imprisonment of not less than 40 years, subject to certain mitigating circumstances. Because Trautloff is currently 43 years

old, the difference between mandatory life and mandatory 40-year sentences is unlikely to be great.

II. *Was There Sufficient Evidence To Support A Conviction As Charged Of Sexual Exploitation Of A Child Under The Age Of Fourteen?*

Trautloff maintains that the State failed to present sufficient evidence to support his conviction of sexual exploitation of a child. He specifically contends that the State failed to provide evidence that he had promoted the sexual exploitation of a child by displaying the pictures that J.M. and he took.

Although Trautloff bases this issue on the language of the complaint, he does not contend that the complaint was deficient. He does not argue that the complaint lacked an essential element; instead, he argues that the complaint was more specific than the statute requires and that the State failed to prove an element that it included in the complaint.

K.S.A. 21-3516(a) sets out six different forms of conduct that constitute sexual exploitation of a child. K.S.A. 21-3516(a)(6) prohibits "promoting any performance that includes sexually explicit conduct by a child under 14 years of age, knowing the character and content of the performance." K.S.A. 21-3516(b)(2) defines "promoting" to mean "procuring, selling, providing, lending, mailing, delivering, transferring, transmitting, distributing, circulating, disseminating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising . . . (B) with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender, the child or another."

Count 4 of the second amended complaint charged Trautloff with sexual exploitation of a child. The complaint alleged that he promoted the performance of sexually explicit conduct by a child under 14 years of age "with the intent to arouse and satisfy the sexual desires or appeal to the prurient interest of the defendant, the child, or another and *displayed said picture*, an off grid felony, in violation of K.S.A. 21-3516(a)(6)." (Emphasis added.) The State filed the second amended complaint on the day the jury trial began.

The same language appeared in the previous two versions of the complaint.

Trautloff maintains on appeal that the complaint correctly charged an alternative form of promoting, specifically emphasizing the element of displaying a picture or photograph, and the State failed to present evidence showing that he *displayed* a photograph. In its response, the State does not argue that the wording of the information was inadvertent and incorrect; the State instead contends that the jury heard sufficient evidence to convict Trautloff on a theory of displaying a picture with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender, the child, or another.

When the sufficiency of the evidence is challenged in a criminal case, this court reviews all the evidence, viewed in the light most favorable to the prosecution, to determine whether the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Gutierrez*, 285 Kan. 332, 336, 172 P.3d 18 (2007).

The jury heard evidence about how the photographs were utilized after they were taken. J.M. testified that Trautloff "wanted me to get pictures of [R.M.] and he wanted to see her. . . . He didn't care how I got them, in panties, T-shirts, nothing on, bras, just however I got them I got them." J.M. testified that she assisted Trautloff in taking photographs of him engaging in sexual acts with R.M. "[s]o that he could look at them later and they would excite him." She further testified that she had observed Trautloff looking at the photographs at the same Village Inn Motel where the photographs had been shot. In addition, she testified that she took a video of Trautloff at the Village Inn Motel at the same time that she took still photographs of Trautloff engaged in sexual conduct with R.M. Her testimony showed that she and Trautloff viewed the video together.

Webster's Third New International Dictionary 654 (1993) includes in the definition of the transitive verb "display" the meaning "to spread before the view: exhibit to the sight or mind." Black's Law Dictionary 471 (6th ed. 1990) defines "to display a work" in the context of copyright law as "to show a copy of it, either directly

or by means of a film, slide, television image, or any other device or process."

Not every factual nuance is susceptible to direct proof. A jury may rely on the evidence to make reasonable inferences about the behavior of a defendant. See *State v. Tyler*, 286 Kan. 1087, 1095, 191 P.3d 306 (2008). A jury that has convicted a defendant is presumed to have believed the State's evidence and to have drawn from that evidence all inferences favorable to the State. *State v. Aikins*, 261 Kan. 346, 392, 932 P.2d 408 (1997).

The evidence showed that Trautloff arranged the settings for the visual recordings and was specific in his instructions to J.M. on when and of what he wanted the recordings made. The only evidence that he also "displayed said picture" is that at one point he looked at the videotape with her. To satisfy this element, it is sufficient to meet the definition of "display" even if the audience consists of one or two persons. The evidence suffices to establish the element of the crime that he displayed a picture by exhibiting or showing it with intent to arouse or gratify his own sexual desire or to appeal to the prurient interest of another.

III.   *Did The District Court Err By Giving A Jury Instruction On Sexual Exploitation Of A Child That Was Broader Than The Charging Document?*

As noted in the discussion above, the State charged Trautloff with promoting the performance of sexually explicit conduct by a child under 14 years of age "with the intent to arouse and satisfy the sexual desires or appeal to the prurient interest of the defendant, the child, or another and displayed said picture, an off grid felony, in violation of K.S.A. 21-3516(a)(6)." Trautloff argues that the jury was instructed on a theory of sexual exploitation that was broader than the narrow language of the information charging him with displaying a picture.

The instruction relating to sexual exploitation of a child did not limit the element that the State had to prove to "displaying." The instruction instead followed the broad language of the statute: " 'Promoting' means procuring, selling, providing, lending, mailing, delivering, transferring, transmitting, distributing, circulating, dis-

seminating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting or advertising . . . with intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender, the child or another." K.S.A. 21-3516(b)(2).

Trautloff did not object to the instruction as it was presented to the jury. An appellate court reviewing a district court's alleged erroneous instruction to a jury applies a clearly erroneous standard where a party did not object to the instruction as given. An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. K.S.A. 22-3414(3); *State v. Salts*, 288 Kan. 263, Syl. ¶ 1, 200 P.3d 464 (2009).

A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. That error is excusable only where the substantial rights of the defendant are not prejudiced. *State v. Wade*, 284 Kan. 527, Syl. ¶ 3, 161 P.3d 704 (2007). It is the long-established rule in Kansas that instructions should be confined to issues made by the pleadings and should not be broader or narrower than the information. See *State v. Booker*, 197 Kan. 13, 15, 415 P.2d 411 (1966). The charging instrument must set out the specific offense alleged against the defendant in order to inform the defendant of the nature of the accusation against him or her and to protect the defendant from being convicted on the basis of facts that were not contemplated in the initial charges. See *Russell v. United States*, 369 U.S. 749, 767, 770, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962).

The State charged Trautloff with the narrow offense of displaying a picture and then presented extensive evidence of other conduct that had much greater weight and emotional substance than the limited evidence relating to the display. Yet, the State did not seek to amend the complaint. The jury was instructed on the broadest possible theory of misconduct under the statute, and this court cannot rule out the possibility that the jury found Trautloff guilty of conduct that was not charged in the information.

By including the phrase "displayed such picture" in the complaint, the State limited itself to a theory that Trautloff committed only that version of the offense. The wording of a complaint is

binding on the State in pursuing its theory before a jury. See, *e.g.,* *State v. Robinson,* 27 Kan. App. 2d 724, 728, 8 P.3d 51 (2000) (conviction for aggravated robbery from the person of another reversed because information and jury instruction omitted words "or presence"; omission was "unfortunate," because testimony was more than sufficient to support conviction for aggravated robbery from the "presence" of the victim).

The broad instruction allowed the jury to convict Trautloff of displaying *or* procuring *or* producing a photograph that included sexually explicit conduct by a child under 14 years of age. It did not compel the jury to find that Trautloff displayed a picture, as alleged in the complaint. As previously described, the evidence of "procuring" or "producing" a photograph was direct and overwhelming, while the evidence that Trautloff "displayed" a photograph or video was minimal and circumstantial. Although Trautloff did not object to the instruction at trial, the instruction was clearly erroneous because we cannot be confident that the jury convicted him only on the basis of the single alternative theory charged and instructed upon. There exists a real possibility that the jury would have rendered a different verdict if the district court had instructed only as to displaying.

IV. *Did Trautloff's Sentence Violate* Apprendi v. New Jersey *Because It Was Based On A Prior Criminal History That Was Not Proven To A Jury Beyond A Reasonable Doubt?*

Trautloff challenges the constitutionality of K.S.A. 21-4704(e)(1), which allows a sentencing court discretion in selecting among the low-, middle-, and high-end sentences based on mitigating and aggravating factors.

Trautloff was not sentenced under K.S.A. 21-4704(e)(1), which is part of the sentencing guidelines. He was sentenced under K.S.A. 21-4642, relating to mandatory life sentences for aggravated habitual sex offenders. The argument, as identified in the appellant's brief, does not relate to the facts of this case.

It may be that Trautloff intended to argue that K.S.A. 21-4642 is unconstitutional because it increases a statutory minimum sentence based on facts not proven to a jury. This court has repeatedly

rejected arguments of this nature. See *State v. Conley*, 287 Kan. 696, 700-01, 197 P.3d 837 (2008); *State v. Warledo*, 286 Kan. 927, 954, 190 P.3d 937 (2008); *State v. Johnson*, 284 Kan. 18, 23, 159 P.3d 161 (2007).

In light of the appellant's argument and the firmly established law in this area, we find no constitutional violation.

*Conclusion*

The conviction for sexual exploitation of a child is reversed, and the case is remanded for a new trial of that count. The sentences for the remaining three counts are reversed, and the case is remanded for resentencing in conformity with this opinion.