NOT DESIGNATED FOR PUBLICATION

No. 112,082

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEVEON D. SHARKEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed March 17, 2017. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., STANDRIDGE and SCHROEDER, JJ.

*Per Curiam*:  Deveon D. Sharkey appeals his convictions for aggravated robbery, aggravated sodomy, kidnapping, and attempted criminal use of a financial card, claiming multiple trial errors. Sharkey alleges the district court denied him the right to a speedy trial; the district court failed to properly instruct the jury on the charge of kidnapping; insufficient evidence was presented to support his kidnapping conviction; his trial counsel was ineffective; there was cumulative error; and the use of his criminal history to establish his sentence violated his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). We find no error by the district court sufficient to support reversal. We affirm.

1

FACTS

After the events on August 12, 2013, Sharkey was charged with aggravated robbery, aggravated sodomy, kidnapping, and attempted criminal use of a financial card.

On September 3, 2013—22 days after his arrest—Sharkey filed a pro se motion asserting his statutory right to a speedy trial and objecting to any continuances. He waived his preliminary hearing and was arraigned on September 12, 2013. His jury trial was initially set for November 4, 2013. On November 4, 2013, the trial date was continued to December 9, 2013. On November 15, 2013, Sharkey filed a pro se motion to dismiss counsel, alleging his attorney violated his right to be present by continuing his jury trial without his consent. He informed the court he had filed a motion asserting his speedy trial rights and objecting to all continuances. Sharkey's motion to dismiss counsel was heard and granted on December 6, 2013. At the hearing, Sharkey agreed to postpose the jury trial set for December 9, 2013, so he could obtain new counsel.

New counsel was appointed on December 10, 2013, and the jury trial was rescheduled for January 6, 2014. After he was appointed, counsel visited Sharkey. Sharkey informed his counsel he objected to any more continuances and was asserting his speedy trial rights. Counsel then told Sharkey he had several cases in front of him and it would be several months before he would be ready for Sharkey's case to go to trial.

Counsel asked the court to continue the trial set for January 6, 2014. Sharkey was not present at the hearing. A new trial date was set for February 3, 2014. Counsel then requested a continuance from that date. Counsel did not consult with Sharkey about the continuance because he had already told Sharkey his case would be continued for several months. Sharkey was not present at the hearing. The trial was continued two more times by trial counsel. Sharkey was not present at any of the hearings to continue the trial. On May 21, 2014, Sharkey filed a motion to dismiss for violation of his right to be present at

hearings and violation of his statutory speedy trial rights; however, the district court never addressed the motion.

Sharkey's trial began on May 27, 2014. His victim, S.D.H., testified she had been out running errands and when she returned home she noticed Sharkey standing in a driveway across the street. Sharkey walked into her yard and asked S.D.H. if he could use her cell phone; she allowed him to do so. He then asked S.D.H. for a cigarette and followed her into her house where he smoked two cigarettes before asking S.D.H. for a ride. S.D.H. told Sharkey she could not give him a ride and asked him to leave. Sharkey asked if he could use the bathroom before he left, and S.D.H. allowed him to do so. Sharkey exited the bathroom with a knife in his hand. He grabbed S.D.H. by her shirt and asked for money. S.D.H. told him she did not have any. Sharkey then took S.D.H. through the house at knifepoint looking for valuables. He collected two rings, an MP3 player, and a video game system.

Sharkey then forced S.D.H. into the bathroom, closed the door, and made her perform oral sex on him. After they exited the bathroom, Sharkey asked S.D.H. for $5. She told him she did not have any cash but had some credit cards in her wallet which was out in her car. Sharkey went outside with S.D.H. and took her Vision card and Wal-Mart money card. S.D.H. wrote down her PIN for the money card and gave it to Sharkey. As Sharkey left, he took S.D.H.'s phone and car keys. S.D.H. then ran across the street and asked her neighbor to call the police. Police found Sharkey at a nearby gas station where he was attempting to use S.D.H.'s money card. A search of Sharkey's person revealed a knife; S.D.H.'s phone, car keys, rings; the MP3 player; and a paper with S.D.H.'s PIN number. The videogame system was also found outside by the gas station.

At trial, Sharkey's version of the events was significantly different. He testified that after asking S.D.H. for a cigarette, he smoked the cigarette on the front porch. He claimed S.D.H. invited him inside because it started to rain, and once they were inside,

3

they made small talk for about 20 minutes. According to Sharkey, S.D.H. asked if he or anyone he knew had methamphetamine. Sharkey told S.D.H. he knew someone who sold methamphetamine and asked her if she had any money to pay for it. Sharkey testified S.D.H. told him to follow her into the bathroom where she performed oral sex on him. He denied having a knife on him at that time. S.D.H. then gave him the videogame system and the money card as payment for the drugs he was going to procure. She then became sick and went to the bathroom. As he was leaving the house, he grabbed her rings, wallet, and a knife, and walked to the gas station.

At the conclusion of the evidence, the jury was instructed on the law. For kidnapping, the jury was instructed that it could find Sharkey guilty if the State proved he confined S.D.H. with the intent to hold her to facilitate the commission of a crime. The jury instruction did not specify the crime alleged to have been facilitated was aggravated robbery, as set forth in the State's complaint. The jury convicted Sharkey of aggravated robbery, aggravated criminal sodomy, kidnapping, and attempted criminal use of a financial card.

Prior to sentencing, Sharkey renewed his motions to dismiss for violations of his statutory speedy trial rights and right to be present at all hearings. He also filed a motion for new trial alleging ineffective assistance of counsel. At the beginning of sentencing, the district court acknowledged it had received Sharkey's pro se motions but was not going to take any action on them unless Sharkey's counsel adopted them. Sharkey's counsel did not adopt the motions. Sharkey was sentenced to 322 months' imprisonment with lifetime postrelease supervision. Sharkey timely appealed.

After his appeal was docketed, the matter was remanded to the district court for a hearing on Sharkey's motion for new trial pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). After hearing testimony from Sharkey and his trial counsel, the

4

district court found Sharkey had not received ineffective assistance of counsel. The district court did not address the speedy trial issue at the *Van Cleave* hearing.

Additional facts are set forth as necessary herein.

ANALYSIS

*K.S.A. 2013 Supp. 22-3402(g) Controls*

Sharkey claims he is entitled to release because the trial did not start within the statutory timeframe (90 days) of K.S.A. 2013 Supp. 22-3402(a), the speedy-trial statute in effect at the time the alleged crimes were committed.

> "This court exercises unlimited review over a district court's legal rulings regarding violations of a defendant's statutory right to a speedy trial. *State v. White*, 275 Kan. 580, 598, 67 P.3d 138 (2003). The primary issue in such appeals—the computation of days to be assessed against the so-called speedy trial clock—requires some level of statutory interpretation and thus is reviewed de novo. 275 Kan. at 600. Nevertheless, there are times, as in the case we now consider, where the assessment of time under our speedy trial statute turns on a factual determination by the district court." *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

Sharkey claims his attorney requested continuances without his permission or knowledge and was acting outside his scope of authority. He also claims this action by his attorney and the district court resulted in a due process violation of his right to be present at all critical hearings, a point we will discuss in the next section. The attorney testified at the *Van Cleave* hearing he told Sharkey when he accepted the appointment his trial would be delayed until his calendar would allow the matter to be tried. The attorney acknowledged he did not discuss with Sharkey every continuance since he initially told him he would need time to prepare for trial.

5

Sharkey admits the district court has not ruled on the speedy trial issue; however, he asserts the record is sufficient for this court to determine whether a speedy trial violation has occurred. The record reflects the total time from arraignment to trial was 257 days. Sharkey concedes part of that time—52 days—was attributable to his request for new counsel and the resulting continuance compelled by appointing new counsel. He also concedes the continuances from November 4, 2013; January 6, 2014; February 3, 2014; March 3, 2014; and March 17, 2014, were all requested by his attorneys but without his approval or knowledge. As Sharkey acknowledges in his brief, actions of defense counsel are attributable to the defendant in computing speedy trial violations unless the defendant timely voices his disagreement with those actions. *Vaughn*, 288 Kan. at 144. However, as Sharkey points out, when there is a disagreement between counsel and a defendant regarding a continuance, the defendant's position takes precedence. *State v. Hines*, 269 Kan. 698, 703-04, 7 P.3d 1237 (2000).

Here, we find no record of any in-court objection by Sharkey as he was not present at the November 4, 2013; January 6, 2014; February 3, 2014; March 3, 2014; and March 17, 2014, hearings on counsel's motions for continuances. While Sharkey clearly agreed to the delay of his trial set for December 9, 2013, with the appointment of new counsel, the record does not show any written waiver of personal appearance or speedy trial after new counsel was appointed.

Given the multiple continuances by trial counsel, we are sympathetic to Sharkey's plight, but the recent amendment to K.S.A. 22-3402 effective on July 1, 2012, adding subsection (g) applies. It provides:

> "If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is prosecutorial misconduct related to such delay. *If a delay is initially attributed to the defendant, but is subsequently*

6

*charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay.*" (Emphasis added.) K.S.A. 2013 Supp. 22-3402(g).

In his brief, Sharkey fails to recognize this statutory change and actually argues the statute in place prior to July 1, 2012, applies. See K.S.A. 22-3402. Sharkey's complaint is trumped by the statutory addition of subsection (g) before he was charged with the various crimes in August 2013.

The record reveals Sharkey's attorney obtained several continuances without his knowledge or permission, and those continuances were charged to him in calculating his statutory right to a speedy trial. However, subsection (g) now controls, and even if the district court erred in charging time to Sharkey because of his attorney's actions and should have charged that time to the State, it does not provide a basis to dismiss the case or reverse the convictions. Thus, given the statutory directive of K.S.A. 2013 Supp. 22-3402(g), Sharkey's argument fails. See *State v. Brownlee*, 302 Kan. 491, 511, 354 P.3d 525 (2015) ("[T]he legislature, which created the statutory right, has decided to eliminate the remedy for its violation in certain circumstances, providing explicitly that the violation 'shall not be used as a ground for dismissing a case or for reversing [the defendant's] conviction.'").

*The Right to Be Present at All Hearings*

Sharkey raises a separate issue regarding violation of his due process rights because he was not present at the hearings on counsel's multiple motions to continue the jury trial. The State agrees the record reflects Sharkey was not present for the hearings when the various trial dates were continued. We agree Sharkey had a right to be present at each continuance hearing and it was error for the district court not to have Sharkey

7

present to voice his agreement or disagreement with his attorney's requested continuances. See K.S.A. 2016 Supp. 22-3208(7) (stating a defendant has the right to be present at a motion hearing). To avoid similar issues in the future, we caution and recommend district courts make sure the defendant is present in person or by two-way communication or has waived the right to be present in person, in open court on the record, or in writing.

We note the facts of this case are similar to the facts in *Brownlee*. He was not present for one hearing where the trial date was continued past the statutorily allotted time for speedy trial purposes. Here, Sharkey—while in custody for this case only—was not present at four separate hearing dates when his trial date was ultimately set past the statutorily allotted time for his trial to occur. The comparison between Sharkey and Brownlee's claims reflects Sharkey's delay was longer. In support of its position the error does not require reversal, the State cites to *State v. Dupree*, 304 Kan. 43, 49-50, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016), where the Supreme Court followed *Brownlee* and found when there is no allegation of a constitutional denial of the right to a speedy trial or an allegation of prosecutorial misconduct, the failure to be present in court does not reversal of the conviction.

We are duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015). With the precedent set by both *Dupree* and *Brownlee* Sharkey is left without relief. Here, he alleges only a statutory right to a speedy trial. He presents no claim that his constitutional right to a speedy trial was violated or the delay was caused by prosecutorial misconduct.

There is no doubt, given our review of the record, the district court improperly denied Sharkey the right to be present at the continuance hearings and incorrectly charged the time associated with the four continuances to Sharkey. Even with that error,

K.S.A. 2013 Supp. 22-3402(g) controls, and the error does not result in the reversal of Sharkey's conviction.

*Sufficient Evidence Supports Sharkey's Conviction for Kidnapping*

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Dunn*, 304 Kan. 773, 821, 375 P.3d 332 (2016).

In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or credibility of witnesses. *Dunn*, 304 Kan. at 822. It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

The State charged Sharkey with kidnapping, alleging that on or about August 12, 2013, Sharkey "then and there unlawfully [took] or confine[d] a person, to-wit: S.D.H., accomplished by force, threat or deception, with the intent to hold S.D.H. to facilitate flight or the commission of a crime, to-wit: Aggravated Robbery." In his brief, Sharkey appears to concede the evidence was sufficient to support a finding that he confined S.D.H. to commit the crime of aggravated sodomy; however, he argues the State failed to prove he confined S.D.H. in order to facilitate aggravated robbery.

In support of his argument, Sharkey correctly cites *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009), which held "[t]he wording of a complaint is binding on the State in pursuing its theory before a jury." He is therefore correct in asserting the State was required to prove he confined S.D.H. to commit *aggravated robbery*, as

9

opposed to confining her to commit *any crime*, the broader definition of the offense under K.S.A. 2013 Supp. 21-5408(a)(2)—the applicable kidnapping statute at the time the offense was committed.

At trial, the State argued Sharkey committed kidnapping by confining S.D.H. to commit aggravated robbery by:  1) taking her around the house at knifepoint to find valuable items to steal; and 2) by telling her not to call the police after he left her home. Sharkey cites to *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), in support of his argument that taking S.D.H. around the house to locate valuables did not constitute confinement. His reliance on *Buggs* is misplaced. Sharkey argues *Buggs* interpreted movement and taking of a person as interchangeable terms but found confining denotes a separate *actus reus* within the meaning of Kansas' kidnapping statute. Even though he is correct on this point, he has not explained how moving S.D.H. around her house at knifepoint does not constitute confinement in her home to facilitate aggravated robbery.

While movement and taking may denote an alternative means, nothing in *Buggs* suggests confinement requires the person be immobilized or otherwise enclosed in an area of limited size. In fact, the *Buggs* holding suggests otherwise. Specifically, *Buggs* stated:

> "We therefore construe our statute as requiring no particular distance of removal, nor any particular time or place of confinement. Under our present statute it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." 219 Kan. at 214.

The *Buggs* court went on to state:  "Our statute requires that the taking or confinement be accomplished not only by the proscribed means (*i.e.*, 'by force, threat or deception') but also with the specific intent to accomplish one of four types of objectives." 219 Kan. at 214. Further, *Buggs* held:

10

"[T]o 'facilitate' in our minds means something more than just to make more convenient. We think that a taking or confining, in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier' as, for example, by lessening the risk of detection." 219 Kan. at 215.

Given this interpretation, when viewed in the light most favorable to the State, a reasonable jury could find Sharkey's use of a knife constituted force and/or threat and made his control of S.D.H. easier to locate the items he took from various rooms of the house. A reasonable jury could also find that doing so at knifepoint lessened the risk of detection as a reasonable person in S.D.H.'s circumstances would not feel free to flee or call for help. Further, it is evident these acts occurred within S.D.H.'s home—an enclosed area—a reasonable factfinder could find Sharkey confined S.D.H. within her home to facilitate the aggravated robbery.

As to the State's second argument, telling S.D.H. not to call the police after Sharkey left her home, likely does not constitute confinement as S.D.H. was outside her home when Sharkey made the statement. We decline to address that the issue further as the evidence reflecting he moved S.D.H. from room to room was more than sufficient to support his conviction for kidnapping.

*No Timely Objection to the Kidnapping Instruction; We Review for Clear Error*

If a party fails to object to an instruction at trial, the appellate court reviews the instruction for clear error. *State v. Littlejohn*, 298 Kan. 632, 644, 316 P.3d 136 (2014) (citing K.S.A. 22-3414[3]). To determine whether an instruction rises to the level of clear error, "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3). [Citation omitted.]" *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The clear error determination must review the impact of the erroneous instruction in light of the entire

11

record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2013). "To establish clear error, 'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Sharkey contends the jury was improperly instructed on the kidnapping charge because the instruction was broader than the offense charged in the complaint. Sharkey acknowledges he did not object to the instruction at trial. Since Sharkey did not object at trial, this court reviews for clear error. See *Littlejohn*, 298 Kan. at 644. Therefore, Sharkey must firmly convince this court that giving a different instruction would have made a difference in the verdict. See *Cooper*, 303 Kan. at 771. The State concedes the jury instruction was erroneous but argues the instruction does not rise to the level of clear error and Sharkey was not prejudiced as a result. We agree with the State.

"A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. That error is excusable only where the substantial rights of the defendant are not prejudiced." *Trautloff*, 289 Kan. at 802. Under Kansas precedent, a defendant's substantial rights are not prejudiced where the defendant is not "misled by the original narrow charge into a failure to challenge the State's case or into commitment to a losing defense strategy." *State v. Charles*, 304 Kan. 158, 171, 372 P.3d 1109 (2016); see *State v. Hart*, 297 Kan. 494, 509-10, 301 P.3d 1279 (2013).

Here, Sharkey was not misled by the original narrow language of the charge. The State did not make any argument that he could be convicted of kidnapping by confining S.D.H. to facilitate the commission of *a crime*; rather, the State specifically argued Sharkey confined S.D.H. to commit aggravated robbery. As previously discussed, the evidence was sufficient to support Sharkey's conviction for kidnapping by confining S.D.H. to facilitate aggravated robbery. The jury also convicted Sharkey of a separate

12

count of aggravated robbery and Sharkey does not challenge the sufficiency of the evidence for that conviction. Sharkey has not shown clear error and has failed to convince this court the jury would have reached a different verdict had a more narrow jury instruction been given.

*No Ineffective Assistance of Counsel*

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate courts determine whether the district court's findings are support by substantial competent evidence and determine whether the factual findings support the court's legal conclusions; the appellate courts apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, "a criminal defendant must establish (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

"The Sixth Amendment [to the United States Constitution] right to counsel is the right to effective assistance of counsel. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Rice*, 261 Kan. 567, Syl. ¶ 12, 932 P.2d 981 (1997).

"The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the effectiveness of counsel's assistance, the defendant must show that

13

counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Rice*, 261 Kan. 567, Syl. ¶ 14.

Sharkey's claims of ineffective assistance of counsel essentially relate to two separate issues:  First, whether trial counsel failed to protect Sharkey's statutory speedy trial rights; and second, whether counsel's preparation and communication prior to trial was deficient. Neither claim warrants reversal because Sharkey has failed to establish prejudice. An appellate court may proceed to the second prong of the *Strickland* test without addressing the first if doing so will intelligently resolve the issue. See *Edgar v. State*, 294 Kan. 828, 843, 283 P.3d 152 (2012) (quoting *Strickland*, 466 U.S. at 697).

At the *Van Cleave* hearing, Sharkey's counsel testified he met with Sharkey at least two times prior to trial. At their initial meeting, counsel got a statement from Sharkey regarding the incident. He also had an investigator meet with Sharkey and get a statement from him. When asked about his investigative efforts, counsel indicated his investigator attempted to locate S.D.H.'s neighbor who called the police, but could not do so. Counsel explained neither the State nor the defense could locate the neighbor. Counsel further indicated he had no indication of any evidence that would link S.D.H. to drug activity, and photographs of S.D.H.'s home showed no indication of drug paraphernalia or anything else that would support Sharkey's contention she was a drug addict.

During their initial meeting, counsel told Sharkey he would not "get to jump ahead" of other cases counsel already had scheduled for trial. Counsel informed Sharkey he planned on continuing the case and it would be approximately 6 months before he

14

would be ready for trial. Counsel acknowledged Sharkey did not want him to continue the case. Counsel testified that because he explained his plans to Sharkey at the initial meeting, he did not consult with him before each subsequent request to continue the trial dates.

Sharkey's claims related to speedy trial concerns do not warrant relief under the *Strickland* test. Whether counsel failed to inform the district court of Sharkey's objection to continuances has no bearing on the evidence presented to the jury at trial. Even if counsel's performance was deficient, it does not reflect prejudice or undermine the outcome of the trial; therefore, the second prong of the *Strickland* test is not met.

As to his second claim of error, the record reflects Sharkey's attorney did not have frequent communication with Sharkey prior to trial, nor did trial counsel perform a comprehensive investigation into Sharkey's claim that S.D.H. was a drug addict. While these claims may show Sharkey's counsel did not provide the best possible representation, they do not necessarily show counsel's performance was objectively deficient. Sharkey has failed to demonstrate any prejudice resulting from counsel's alleged errors. As the district court noted, Sharkey merely speculated further investigation *may* have revealed S.D.H. was a drug addict and *might* have undermined her credibility with the jury. However, he has failed to offer any evidence in support of his claim S.D.H. *was in fact* a drug addict or basis to substantiate his allegation that she had a drug problem. Further, while Sharkey may have enjoyed more frequent meetings with counsel, he fails to explain why the number of visits was deficient or how he was prejudiced. While we acknowledge periodic visits with counsel can be beneficial, it is not necessary for counsel to be there to babysit the defendant. In fact, at the *Van Cleave* hearing, the attorney representing Sharkey admitted he could not show prejudice as a result. Because Sharkey cannot show prejudice as a result of the errors he claims trial counsel committed, his claim of ineffective assistance of counsel fails.

15

*No Cumulative Error*

Cumulative error occurs when the totality of the circumstances establishes the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, the appellate court examines the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). We are duty bound to find no cumulative error when the record fails to support the errors the defendant raises on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015).

Here, Sharkey has not established any clear point of error. The issues he raises are either without merit or do not rise past the level of harmless error. Cumulative error does not apply. See *Marshall*, 303 Kan. at 451.

*No* Apprendi *Violation*

Finally, Sharkey argues the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it used his prior convictions to enhance his sentence without proving those convictions to a jury beyond a reasonable doubt, contrary to the United States Supreme Court's guidance in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Sharkey recognizes the Kansas Supreme Court rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), but includes the issue to preserve it for federal review. Because there is no indication the Kansas Supreme Court is departing from this position, this court is duty bound to follow established precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). The district court properly used Sharkey's criminal history to establish his sentence.

Affirmed.